IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| | : |
| GEORGE EARL GEE | |
| | : |
| | |
| v. | : Criminal No. DKC 15-0317-3 |
| | Civil Action No. DKC 19-0286 |
| | : |
| UNITED STATES OF AMERICA | |
| | : |

**MEMORANDUM OPINION**

Presently pending and ready for resolution is the motion to "correct" sentence filed by Petitioner George Earl Gee (ECF No. 638), as well as a request to supplement this filing. (ECF No. 663). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion will be denied, as will the request to supplement.

**I.   Background**

On October 21, 2016, Petitioner plead guilty, pursuant to a Fed.R.Crim.P. 11(c)(1)(C) plea agreement (a "C-Plea"), to Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances in violation of 21 U.S.C §§ 846 and 841(b)(1)(A). (ECF No. 473) (citing ECF No. 456, the second superseding indictment). On March 27, 2017, Petitioner was sentenced to 216 months' imprisonment, the punishment stipulated to in the C-Plea. On May 26, 2017, Mr. Gee filed a motion for an

out-of-time appeal, arguing that his counsel William Mitchell, Jr., had failed to file a timely appeal despite being instructed to do so by Mr. Gee. (ECF No. 595). This motion was denied by an order on June 12 that explained that upon a finding of "excusable neglect or good cause," a district court is allowed to extend the normal fourteen-day deadline to file an appeal after the entry of judgment by thirty days, but no more. As Mr. Gee's request came outside that additional thirty-day window, the extension request was found to be barred. (ECF No. 597, at 1-2). Nevertheless, Petitioner filed a notice of appeal of his case to the Fourth Circuit. (ECF No. 599). The appellate court appointed Julie Marie Reamy to represent Mr. Gee on his direct appeal. (ECF No. 602). Ultimately, the Fourth Circuit affirmed the District Court's judgment on January 29, 2018 (ECF No. 624) and issued its mandate effectuating this judgment on February 20 (ECF No. 629), and so his conviction became final on April 30, 2018.[1]

---

[1] *United States v. Sanders*, 247 F.3d 139, 142 (4th Cir. 2001), held that a conviction became final for § 2255 purposes on the date judgment was entered. However, after the Supreme Court decided *Clay v. United States*, 537 U.S. 522, 527 (2003), holding that finality attaches when the time for filing a certiorari petition expires, the *Sanders* holding has been called into question. Most courts now assume that, when no appeal is taken, a judgment becomes final when the time for filing such an appeal expires. *See Brown v. United States*, ELH-16-4075, 2017 WL 4946990, at *2 (D.Md. Nov. 1, 2017) (discussing this approach and citing more recent authority). Like in *Clay*, this means that Mr. Gee's conviction became final "90 days after entry of the Court of Appeals' judgement, and 69 days after the issuance of the appellate

Kevin McCants, current counsel for Mr. Gee, filed a motion to "correct" his sentence under 28 U.S.C. § 2255 on Petitioner's behalf on January 30, 2019. (ECF No. 638). This motion makes reference to (but did not attach) a "24-page *pro se* supplemental brief Gee filed in the direct appeal" that "established he did not fully grasp the concessions he made in his plea agreement as to quantity and acceptance of a leadership role in the conspiracy."[2] On February 1, 2019, the United States of America ("the government") was directed to file an answer within sixty days. (ECF No. 639). After a number of extensions, the government responded in opposition on May 22, 2019. (ECF No. 650). While Mr. Gee was given an extension to file his reply, on November 25, 2019, the court received what appeared to be another § 2255 motion, this time prepared by Mr. Gee himself and submitted directly from

---

court's mandate," when the deadline for petitioning for a writ of certiorari expired. 537 U.S., at 525. Ninety days after January 29, 2018 is April 29, 2018, which is a Sunday, and the next day, April 30, is exactly sixty-nine days after the issuance of the mandate. Regardless, this ninety-one day difference does not affect the timeliness determination in this case.

[2] The Fourth Circuit noted that it had reviewed the claims detailed in these briefs but does not discuss their content and summarily declared them "without merit." *United States v. Gee*, 709 Fed.Appx. 240, 241 (4th Cir. 2018). Such consideration and rejection on direct appeal alone might be fatal to inclusion of this claim in Petitioner's § 2255 motion, but, as the specifics of these briefs were not discussed by the Fourth Circuit, this argument will be considered.

prison. (ECF No. 663).[3]  The filing includes an affidavit from Mr. Gee that catalogues a litany of complaints Petitioner has with Mr. Mitchell's former representation including that he "discovered Attorney Mitchell was not being truthful" and had misinformed him about the nature of his offense, the effect of his criminal history, and the penalties he stood to face. (ECF No. 663-1).  As the purpose of the filing was not clear on its face, however, on November 26, 2019, the court directed Mr. Gee's counsel to report back within fourteen days on how to construe this submission. (ECF No. 664).  On December 10, 2019, Mr. McCants prepared a status report in which Mr. Gee asked that these supplemental arguments be considered as "relevant issues to the 2255 litigation [already] at issue." (ECF No. 665).[4]  A paperless notice was issued giving the

---

[3] Mr. Gee therefore gets the benefit of the "prison mailbox rule" in that this second purported motion to correct/vacate is considered "filed" when he put it into the prison mail system (presumably in or around November 7, 2019, when he signed it).  As this earlier date of filing does not affect the motion's timeliness, the date it was docketed will be used for simplicity's sake.

[4] This status report clarified, somewhat, the meaning of this second filing.  It reported, among other things, that Mr. Gee does not want it to be inferred from his direct filing that he wants new counsel or to continue *pro se*.  (ECF No. 665). Instead he simply wants the legal argument he outlines "to be adopted by Counsel" and incorporated into his original petition. (ECF No. 665).  It seems also to shed some light on why the initial petition is labeled a motion to "correct," and not to vacate, Petitioner's sentence; Mr. McCants writes that, "Mr. Gee wants the [court] to know the whole purpose of his 2255 petition is to urge the government to allow him to accept the original plea offer before

government until December 24, 2019, to respond to Mr. Gee's apparent attempt to supplement his original petition.   After another extension, the government filed an opposition to this new motion on January 9, 2020.  (ECF No. 669).  Mr. Gee ultimately did not file a reply to either of his motions and the time to do so has expired.

## II.  Motion to Correct Sentence

### A.  Standard of Review

To be eligible for relief under § 2255, a petitioner must show, by a preponderance of the evidence, that his "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law."  28 U.S.C. § 2255(a).  Alternatively, "the scope of review of non-constitutional error is more limited than that of constitutional error; a non[-]constitutional error does not provide a basis for collateral attack unless it involves 'a fundamental defect which inherently results in a complete miscarriage of justice,' or is 'inconsistent with the rudimentary

_____

he had to switch lawyers when he learned his trial counsel Harry Tun was suspended from practices law."  What this purported, original plea offer entailed, however, is never made clear.  The second motion, nonetheless, is properly construed as a request to supplement Mr. Gee's pending § 2255 motion.

demands of fair procedure.'" *United States v. Mikalajunas*, 186 F.3d 490, 495–96 (4th Cir. 1999) (internal citations omitted).

A *pro se* movant is entitled to have his arguments reviewed with appropriate consideration. *See Gordon v. Leeke*, 574 F.2d 1147, 1151–53 (4th Cir. 1978). But if the § 2255 motion, along with the files and records of the case, conclusively shows that he is not entitled to relief, a hearing on the motion is unnecessary and the claims raised in the motion may be dismissed summarily. § 2255(b).

**B.   Ineffective Assistance of Counsel**

Petitioner's motion to correct his sentence, and its request to supplement it, center around an alleged failure of Petitioner's former counsel fully to explain to him the effects of his plea —— in particular that it foreclosed his right to challenge the drug weight involved in his conspiracy to distribute and to possess with intent to distribute controlled substances conviction —— or the necessary elements of that charge under 21 U.S.C. § 846. (ECF Nos. 638, at 3, and ECF No. 663, "GROUND ONE" at 4).

Mr. Gee concedes that he admitted to being part of the conspiracy and signed the "Government's written proffer," but he claims that he "did not fully appreciate the complete agreement," particularly on these fronts. He argues that his confusion was exacerbated by a shuffling of counsel, starting with Mr. Mitchell as his appointed counsel and ending with his re-appearance as

6

counsel close to trial and after the withdrawal of four different attorneys in the interim (Mr. Mitchell's initial withdrawal included). (ECF No. 638, at 2-3). It also asserts more vaguely, as a purported second supplemental basis of relief, that "Counsel rendered ineffective assistance for providing 'misinformation' about the facts in relation to the consequences of the plea." He asserts that his Sixth Amendment right to counsel was thereby violated. (ECF No. 663, "GROUND TWO" at 5). This claim, however, is entirely duplicitous of the ineffective assistance claim raised in Mr. Gee's main petition and so his request to add it as a supplement will be denied. The supplement also adds that Mr. Mitchell "failed to object" to the district court finding him a career offender under § 4B1.1(a) at sentencing. (*Id.*, "GROUND THREE" at 7).

### 1.  Legal Standard

To establish ineffective assistance of counsel, the petitioner must show both that his attorney's performance fell below an objective standard of reasonableness and that he suffered actual prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). There is a strong presumption that counsel's conduct falls within a wide range of reasonably professional conduct, and courts must be highly deferential in scrutinizing counsel's performance. *Strickland*, 466 U.S. at 688-89; *Bunch v. Thompson*, 949 F.2d 1354, 1363 (4th Cir. 1991). A determination need not be made concerning

the attorney's performance if it is clear that no prejudice could have resulted from it. *Strickland*, 466 U.S. at 697.

In the context of a § 2255 petition challenging a conviction following a guilty plea, a defendant establishes prejudice by demonstrating "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *accord United States v. Mooney*, 497 F.3d 397, 401 (4th Cir. 2007). Moreover, Petitioner "must convince the court" that such a decision "would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). "The challenger's subjective preferences, therefore, are not dispositive; what matters is whether proceeding to trial would have been objectively reasonable in light of all of the facts." *United States v. Fugit*, 703 F.3d 248, 260 (4th Cir. 2012).

A petitioner who pleads guilty has an especially high burden to establish an ineffective assistance claim. As the Supreme Court of the United States explained, "[t]he plea process brings to the criminal justice system a stability and a certainty that must not be undermined by the prospect of collateral challenges in cases . . . where witnesses and evidence were not presented in the first place." *Premo v. Moore*, 562 U.S. 115, 132 (2011). Thus, a petitioner alleging ineffective assistance in the context of a

8

guilty plea must meet a "substantial burden . . . to avoid the plea[.]" *Id.*

## 2.  **Timeliness**

As a threshold matter, Petitioner's "GROUND THREE" claim in his request to supplement is untimely.  Pursuant to 28 U.S.C. § 2255(f), a federal prisoner must file a motion to vacate, set aside, or correct his sentence within one year of the latest of the following dates:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

An otherwise untimely amendment to a timely claim is considered timely when it "relates back" because it arises out of the "conduct, transaction, or occurrence set forth . . . set forth in the original pleading." *Mayle v. Felix*, 545 U.S. 664, 649 (2005) (citing Fed.R.Civ.P. 15(c)(2)).

Mr. Gee's *pro se* supplement was filed on November 25, 2019, significantly more than a year after his conviction became final on April 30, 2018.  As the alleged first and second grounds in Petitioner's supplement relate back to the central claims in his timely motion, and arise out of the same operative fact, i.e., alleged mistakes by counsel in informing him about the plea and its consequences regarding quantity, they are timely despite their time of filing.  "Ground Three," however, arises out of an entirely new theory of how Mr. Mitchell failed in his duties: counsel, Mr. Gee argues, should have objected to the "improper application" of the career offender provision of the U.S. Sentencing Guidelines to his sentence.  (ECF No. 663, at 7).  This claim therefore does not relate back to any claims in his first petition, and Mr. Gee is not able to point to newly discovered facts or rights to revive it.  The third ground for relief that Petitioner wishes to add to his motion to correct his sentence will be denied.

### 3.   Contradicted by Sworn Statements

The government argues that Petitioner's surviving ineffective assistance claims — that he did not understand the plea or its downstream effect to him (as emphasized in both the petition and the request to supplement it) — are contradicted by the statements he made under oath.  Even if counsel's representation was deficient, moreover, the government argues that Petitioner does not allege that but for his alleged failures he would have gone to

trial.  The government argues that Petitioner does not assert prejudice because he cannot: his post-trial sentencing guidelines would have well outweighed his sentence post plea.  It points out that this is true, to a lesser extent, even if ultimately he was not found to be a Career Offender and was found guilty of *only* the conspiracy count to which he plead guilty.[5]  Nonetheless, such a projection is highly conservative, as the government points out that he would have faced three discrete counts under 21 U.S.C. § 841 as well as two "telephone counts" for commission of a drug felony over the phone under 21 U.S.C. § 843.  (ECF No. 650, at 6-7).

Petitioner's failure to argue, let alone show, prejudice is likely fatal to his motion.  Regardless, the effectiveness of Petitioner's counsel need not be scrutinized as Mr. Gee's claimed

---

[5] Although the plea stipulated to 216 months' imprisonment, its guidelines calculations projected that Petitioner would have a final offense level of thirty-three or thirty-four for the single conspiracy count to which he plead guilty, depending on whether he was designated a Career Offender.  While the plea states that there was no agreement regarding criminal history (*see* ECF No. 473, ¶ 7), it does note that he would be in Criminal History Category VI if he was designated as a career offender.  (*Id.*, ¶ 6(e)).  The government implies that "with his prior history," he likely would have been determined to be a Career Offender.  It notes that he nonetheless stood to face a stiffer penalty than the plea offered, even if he "merely" was found to be in Criminal History Category V and with  an offense level of thirty-six — the projected offense level for the conspiracy count *alone,* without the two-level reduction for his acceptance of responsibility and one-level reduction for timely notice of an intention to pled guilty, but also without Career Offender status.  (ECF No. 650) (referencing ECF No. 473, ¶ 6(d)).  An offense level of thirty-six and a Category V criminal history produces a guideline range of 292-365 months' imprisonment.

misunderstandings are directly contradicted by his sworn statements under oath as the government asserts. (*Id.*, at 7) (citing *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) ("[I]n the absence of extraordinary circumstances . . . allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false.") (internal quotation marks omitted)).

The stipulated facts of the plea clearly lay out the quantities of drugs involved in this case and the potential penalties those quantities carried under the conspiracy count. The government succinctly writes in opposition to Mr. Gee's attempted supplement:

> The plea agreement itself notes that on three occasions Gee returned from New Jersey with at least 390 grams, 390 grams, and 400 grams, respectively, of cocaine powder. The plea agreement statement of facts also describes Gee's distribution of 21 grams of powder cocaine and 20 grams of crack cocaine to coconspirators. That amount of cocaine powder by itself—1.2 kilograms—would be sufficient for a conviction under 21 U.S.C. § 841(b)(1)(B) and trigger a mandatory 5 year minimum and up to 40 years maximum in prison, assuming no 21 U.S.C. § 851 enhancement. But, of course, up until shortly before Gee's plea there *was* a 21 U.S.C. § 851 enhancement notice pending in the case, and that enhancement would have resulted in a mandatory minimum of 10 years to life under 21 U.S.C. § 841(b)(1)(B) or 20 years to life under 21 U.S.C. § 841(b)(1)(A).

(ECF No. 669, at 1-2);(*see* ECF No. 473-1, "Stipulated Facts"). The government goes on to explain that this does not account for the fact that a portion of the cocaine was cooked into crack cocaine, or the four to five kilograms of cocaine which Gee and his supplier in New York discussed purchasing, so that Mr. Gee could distribute a portion. Therefore, it was "reasonably foreseeable," to Mr. Gee from the "bare facts" of the plea, the government argues, that the conspiracy in which he was involved would have resulted in "the distribution of well over five kilograms of cocaine and more than 280 grams of crack cocaine." (ECF No. 669, at 2).

The plain terms of the plea, also, explicitly lay out the basic elements of the crime to which Mr. Gee admitted culpability. As the government asserts in its first opposition, the agreement not only details what a drug conspiracy charge would require it to prove at trial but includes the amounts of substances involved. (ECF No. 650, at 1) (citing ECF No. 473, "Elements of the Crime," ¶ 2). The government also, rightly highlights the last page of the plea agreement and its recitation above the signature line that, by signing, the defendant acknowledges that he has read and reviewed the terms of the agreement, in full, and agrees to it, in full. (ECF No. 473, at 8).

Any claim that Petitioner misunderstood these terms is foreclosed by his own subsequent representations. At Mr. Gee's Rule 11 hearing, the court directed him to this signature page and asked if he had signed it. He said he had and after having read it, having reviewed it with his attorney, and having made sure he understood it. (ECF No. 650, at 4) (discussing ECF No. 605, the hearing transcript at 10-11). The stipulated facts were also read into the record; Petitioner was asked if the facts were true and if he was "in fact, guilty of Count One of the superseding indictment?" and he responded yes and yes. (*See* ECF No. 605, at 19) (discussing ECF Nos. 473, at 8, and 456, the second superseding indictment). Petitioner cannot subsequently claim he did not understand the nature of his plea. The ineffective assistance of counsel claims will be denied.

### C.   A Factual Basis for His Plea

Petitioner's request to supplement also re-asserts a claim he made in his appeal to the Fourth Circuit: "The District Court has failed to accept a sufficient 'factual basis' to Petitioner Gee's plea, pursuant to the element of 'an agreement between two or more persons,' in violation of Rule 11(b)(3)" of the Fed.R.Crim.P. (ECF No. 663, "GROUND FOUR," at 8).[6]   If the merits of this petition

---

[6] The § 2255 form used by Petitioner to file his supplement asks, as elsewhere, if he raised this argument on direct appeal and he marked "no" and commented "Appellate Attorney wouldn't raise

14

were reached, Mr. Gee would have an uphill battling to show this non-constitutional defect in his conviction: even assuming he could prove such a defect existed, he would have to show either a manifest injustice occurred as a result or that his conviction was at odds with the basic demands of fair procedure.

Regardless, the merits need not be addressed.  If Mr. Gee were raising this issue for the first time, as he claims, he would be time barred as this November 25, 2019, filing was submitted far more than a year after his conviction became final and this claim is not based on any newly discovered fact(s).  Mr. Gee has already raised this issue on appeal, however, and lost; this court has said that a petitioner may not escape the Fourth Circuit's consideration and rejection of a legal argument on direct review by incorporating it into a § 2255 motion.  *Brown v. United States*, No. DKC 07-0170, 2011 WL 886214, at *5 (D.Md. Mar. 11, 2011) (citing, among others, *Anderson v. United States*, 468 F.Supp.2d 780, 785 (D.Md. 2007) ("It is well-settled law that an issue that has been determined on direct appeal may not be relitigated in a § 2255 motion.").  In *Brown* it was noted that "the bar is even

---

it" when asked why.  (ECF No. 663).  This, however, is directly contradicted by the Fourth Circuit opinion that highlights that this was counsel's exact and central argument in his appeal before that court, down to his central reliance on the *Ketchum* case.  *Gee*, 709 Fed.Appx. at 241 (citing *United States v. Ketchum*, 550 F.3d 363, 366 (4ᵗʰ Cir. 2008)).  In fact, his counsel highlights in his central § 2255 motion that Mr. Gee had raised this argument on appeal.  (ECF No. 638, at 3).

stronger [] where the Fourth Circuit denied [the petitioner's] claim on the merits," as here. *Id.; see Gee*, 709 Fed.Appx. at 241 ("Because Gee agreed to the factual basis before entering his guilty plea, his belated objections are without merit, and we find that the district court developed an appropriate factual basis."). Petitioner's request to supplement his petition with this claim will be denied.

## III. Conclusion

For the foregoing reasons, Petitioner's motion to correct his sentence, as well as his request to file a supplemental motion to vacate/correct, will be denied.  A separate order will follow.

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. §§ 2254 or 2255, the court is also required to issue or deny a certificate of appealability when it enters a final order adverse to the petitioner.  A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Where the court denies the petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that "reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); see also

*Miller-El v. Cockrell*, 537 U.S. 322, 336–38 (2003).  Where a motion is denied on a procedural ground, a certificate of appealability will not issue unless the petitioner can "demonstrate both (1) that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and (2) that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Rose v. Lee,* 252 F.3d 676, 684 (4th Cir. 2001) (internal marks omitted).

Petitioner does not satisfy the above standards. Accordingly, a certificate of appealability will not issue.  A separate order will follow.

                                          /s/
                              _____
                              DEBORAH K. CHASANOW
                              United States District Judge